UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHARLES ELLIS,

Plaintiff,

v.

KERN MEDICAL CENTER, et al.,

Defendants.

1:23-cv-01344-KES-SKO (PC)

**FINDINGS AND RECOMMENDATIONS TO PROCEED ON CERTAIN CLAIMS AND TO DISMISS KERN MEDICAL CENTER FROM THIS ACTION FOLLOWING SCREENING OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

**14-DAY OBJECTION DEADLINE**

Plaintiff is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

## I. BACKGROUND

The Court issued its First Screening Order on January 16, 2024. (Doc. 6.) It determined Plaintiff's complaint failed to state a claim upon which relief could be granted against any named defendant. (*Id*. at 4-12.) Plaintiff was granted 21 days within which to file a first amended complaint or a notice of voluntary dismissal. (*Id*. at 12-13.)

On February 21, 2024, when Plaintiff failed to timely file a first amended complaint, the Court issued Findings and Recommendations to dismiss this action for Plaintiff's to obey court orders and failure to prosecute. (Doc. 8.) Objections were due within 14 days. (*Id*. at 4.)

On March 11, 2024, Plaintiff filed a document titled "Motion: Requesting Time

Extension, and Consideration for Counsel at this Time, be Appointed." (Doc. 9.)

On March 14, 2024, the Court issued its Order Vacating Findings and Recommendations to Dismiss This Action for Plaintiff's Failure to Obey Court Orders and Failure to Prosecute; Order Granting Plaintiff's Request for Extension of Time to Comply with the First Screening Order; and Order Denying Plaintiff's Request to Appoint Counsel. (Doc. 11.) Relevant here, Plaintiff was ordered to file a first amended complaint within 21 days. (*Id.* at 6.)

On March 11, 2024, Plaintiff filed a first amended complaint.[1] (Doc. 12.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz,* 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must

[1] The amended complaint is signed and dated March 1, 2024.

set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

**B. Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**C. Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g.*, *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to

adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

//

//

## IV. DISCUSSION

### A. Plaintiff's First Amended Complaint

Plaintiff identifies "Dr. Hodge … a pain [management] doctor … working for Kern Medical Center," "Dr. Gonzales … a doctor… [at] Kern Medical," and "Dr. Hodge … DR … [at] Kern Medical Center." (Doc. 12 at 2-3.)[2] He did not name "Kern Medical Center" as a defendant. (*Id.*) Plaintiff seeks "Monetary relief, $25,000; and Medical Care needed." (*Id.* at 5.)

### B. Plaintiff's Allegations

Plaintiff contends he is a pretrial detainee at the Kern County Jail and has been incarcerated since February 3, 2022. (Doc. 12 at 6.) He alleges he has been complaining of knee pain for months before an MRI was conducted. (*Id.*) The MRI revealed Plaintiff had a torn meniscus in his left knee. (*Id.*) He was scheduled to see orthopedic doctors and specialists and was then recommended for surgical repair. (*Id.*) Although surgery was set for November 22, 2022, that date "came and went, without so much as a reason for the cancellation." (*Id.*) Plaintiff contends he is still waiting for the surgery and is not receiving pain medications. (*Id.*)

Defendant Gonzalez is a doctor working at the Kern County Jail Lerdo Justice Facility and supervises nurse practitioners. (Doc. 12 at 6.) Plaintiff contends he "approached medical" and advised them of his injury and was eventually given pain medications. (*Id.* at 6-7.) Plaintiff states he was tested for illegal substance abuse after being prescribed pain medication. (*Id.* at 7.) He was informed than an injury must be deemed serious enough to require narcotic pain medications and that his injury was serious. (*Id.*) Plaintiff states he was initially prescribed Tramadol at 50 milligrams, twice a day, which was increased to 100 milligrams, three times a day, for approximately six to seven months. (*Id.*) He alleges he was then approved for pain management and scheduled to see Defendant Hodge, "who is a [doctor] employed at the Kern Medical Center." (*Id.*)

Defendant Hodge reviewed Plaintiff's injury and the MRI results. (Doc. 12 at 7.) Hodge prescribed oxycodone for Plaintiff's pain. (*Id.*) Plaintiff asserts Hodge "[d]rug screened" him the

---

[2] Despite this duplication, it is clear from the facts asserted that there is only one Defendant Hodge.

same day he prescribed oxycodone, and the results came back positive. (*Id.*) Plaintiff contends all pain medication was "immediately discontinued" as a result. (*Id.* at 7-8.) He asserts he was deprived of medical care and pain relief "due to Dr. Hodge's decision to discontinue [his] meds." (*Id.* at 8.) Plaintiff states he "may have given a dirty urine sample, which is true," but contends "that does not negate" the fact he experienced pain, and it does not give a primary care physician the right to refuse medical care afforded by the Fourteenth Amendment. (*Id.*) Plaintiff contends Hodge's discontinuation of his pain medication was "direct and intentional" because Hodge knew Plaintiff would "be in pain daily" but chose not to treat Plaintiff. (*Id.* at 8-9.) Plaintiff asserts he has a right to medical treatment "whether he's a [d]rug addict or not." (*Id.* at 9.)

Plaintiff contends Defendant Hodge advised him that he and Defendant Gonzalez had agreed to discontinue Plaintiff's pain management treatment as a matter of policy. (Doc. 12 at 9.) Hodge's act caused Plaintiff to be deprived of medical care and was the moving force behind the constitutional violation. (*Id.*)

Plaintiff asserts Defendant Gonzalez "is the policymaker that the nurse practitioners answer to, who has final authority." (Doc. 12 at 9.) It Gonzalez's policy, in combination with Defendant Hodge, to give the final authorization to maintain or discontinue narcotic pain medications. (*Id.*) Plaintiff alleges Gonzalez has the "final say" and that Hodge will not prescribe pain medications without Gonzalez's approval and "vice/versa." (*Id.*) Gonzalez and Hodge's decision "to uphold policy that deprived Plaintiff" of medical care is a form of punishment, "for the dirty urine sample." (*Id.*) Plaintiff alleges he lost privileges and is in constant pain. (*Id.*) Gonzalez and Hodge's decision was intentional and placed him at serious risk of suffering serious harm. (*Id.* at 10.) Defendants were aware of his injury and pain and did not take any reasonable available measures to alleviate his pain, "or take steps to try and heal Plaintiff's injury by offering corrective, recommended surgery protocols …." (*Id.*) He contends both defendants completely ignored his pain complaints and requests for medical assistance. (*Id.*)

Plaintiff contends "[n]o policy should be in place that allows primary care physicians to withhold the pain relief required to alleviate anyone's pain." (Doc. 12 at 11.) Defendants Gonzalez and Hodge's actions exacerbated Plaintiff's existing injury, added excruciating

"withdrawal symptoms," making "a man almost, and assuredly, have to cry out at times." (*Id.*)

Once the narcotic pain medications were discontinued, Plaintiff alleges that Defendant Hodge refused to prescribe non-narcotic pain medications "because they never helped anyway," causing Plaintiff to "just suffer." (Doc. 12 at 12.) Plaintiff asserts the withdrawal symptoms caused by the discontinued narcotic pain medication is "a new injury." (*Id.*)

Plaintiff states he is a recovery drug addict. (Doc. 12 at 12.) He had a "moment of weakness" and relapse and contends he should not have been punished for it. (*Id.*) Plaintiff contends he is entitled to medical treatment for his injury and pain. (*Id.*) His condition has worsened, and he is "receiving no treatment at all, whatsoever, to fix [his] injuries." (*Id.* at 13.) Plaintiff states the only form of assistance he has been provided is the use of a wheelchair. (*Id.*)

Plaintiff asserts "Kern Medical Center" is "liable under color of law" for failing to perform the surgery approved by its Doctors Bekker and Yusef[3] which has not been performed. (Doc. 12 at 13-14.) Plaintiff asserts that the fact the recommended surgery was never performed at Kern Medical Center means that it "should have, or would have been bound to notice what is going on, after so long and by [Plaintiff] not receiving" the recommended surgery, making it liable. (*Id.*)

**C. Plaintiff's Claim**

***Applicable Legal Standards***

"The Cruel and Unusual Punishments Clause[, under the Eighth Amendment,] was designed to protect those convicted of crimes." *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (internal quotation marks & citation omitted). In contrast, "[c]laims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). The Supreme Court has explained a Fourteenth Amendment claim is subject to a different standard than a claim under the Eighth Amendment's Cruel and Unusual Punishment Clause because the language and nature of the claims often differ, and "most

[3] Neither of these individuals is named as a defendant in this action.

importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Kinsley v. Hendrickson*, 576 U.S. 389, 400 (2015). The Supreme Court held that, in contrast to the subjective standard in an Eighth Amendment excessive force case, "an objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment." *Id*. at 402.

The Ninth Circuit has extended the *Kingsley* objective standard to failure to protect and section 1983 medical care claims by pretrial detainees. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (pre-trial detainee claims for violations of the right to adequate medical care must be evaluated under an objective deliberate indifference standard); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (applying *Kingsley* objective standard to failure to protect claims). Thus, to bring a pretrial detainee's failure to protect or inadequate medical care claim under the Fourteenth Amendment, a plaintiff must establish:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071. In contrast to the knowing and purposeful state of mind in the first element, the remaining elements require an objective standard. *See Castro*, 833 F.3d at 1070-71. Specifically, the third element must be viewed on each case's particular facts and circumstances, and the plaintiff must prove the defendant acted with "more than negligence but less than subjective intent – something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071). "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).

***Analysis***

Plaintiff's Claims Against Defendants Gonzalez and Hodge

Liberally construing the first amended complaint and accepting all facts as true, Plaintiff

plausibly alleges Fourteenth Amendment claims against Defendants and Gonzalez and Hodge. Regarding the first *Gordon* factor, Plaintiff plausibly alleges Defendants Gonzalez and Hodge made an intentional decision to deny Plaintiff *all* pain medications after Plaintiff tested positive or "dirty" following a drug screen. Plaintiff also plausibly alleges Gonzalez and Hodge's actions put him at substantial risk of suffering serious harm given his existing knee condition and continuing pain complaints, particularly after surgery was recommended but has never been provided. The Court finds it reasonable to infer from the allegations that Gonzalez and Hodge's actions resulted in the cancellation of the recommended surgery. Plaintiff also sufficiently alleges that Gonzalez and Hodge did not take reasonable available measures to abate the risk presented and that the consequences of their actions were obvious. Finally, concerning the fourth *Gordon* factor, Plaintiff plausibly alleges Gonzalez and Hodge's refusal to prescribe any pain medication caused him further injury and continued constant pain. *Gordon*, 888 F.3d at 1125.

Plaintiff's Claim Against Kern Medical Center

Although Plaintiff did not list Kern Medical Center as a defendant in the first amended complaint, (*see* Doc. 12 at 2-3), given Plaintiff's factual assertions at pages 13 and 14, the Court considers such a claim.

"A private physician or hospital that contracts with a public prison system to provide treatment for inmates performs a public function and acts under color of law for purposes of § 1983." *George v. Sonoma Cnty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010) (citing *West v. Atkins*, 487 U.S. 42, 56 n. 15 (1988); *Lopez v. Dep't of Health Servs*., 939 F.2d 881, 883 (9th Cir.1991)). In order to state a claim against private entities who have performed a public function and have acted under color of law for purposes of section 1983, Plaintiff must allege facts demonstrating that his constitutional rights were violated based upon a "policy, decision, or custom promulgated or endorsed by the private entity." *George*, 732 F. Supp. 2d at 940; *see Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 822 (7th Cir. 2009) (stating that, "like a municipality, a private corporation can be liable if the injury alleged is the result of a policy or practice, or liability can be demonstrated indirectly by showing a series of bad acts and inviting the court to infer from them that the policy-making level of government was bound to have

noticed what was going on and by failing to do anything must have encouraged or at least condoned the misconduct of subordinate officers"); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (to state an official capacity claim under section 1983, a plaintiff must allege that the official was acting pursuant to a policy or custom).

Here, even liberally construing the first amended complaint, Plaintiff fails to state a claim against Kern Medical Center. Plaintiff fails to allege any facts demonstrating his constitutional rights were violated based upon a policy promulgated or endorsed by Kern Medical Center. The facts alleged by Plaintiff—that Kern Medical Center should be liable because the surgery recommended by other physicians in its employ was never performed—is insufficient. *George*, 732 F. Supp. 2d at 940; *Rodriguez*, 577 F.3d at 822.

Plaintiff fails to state a claim upon which relief can be granted against Kern Medical Center. Because Plaintiff's first amended complaint is deficient for the same reasons as those articulated in the Court's original screening order (*see* Doc. 6 at 9-10), and because Plaintiff has failed to remedy those deficiencies, Plaintiff cannot cure his pleadings; thus, that leave to amend would be futile. *See Hartman v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir. 2013) (affirming dismissal of first amended complaint and finding leave to amend futile where complaint's allegations belied plaintiff's entitlement to relief). The Court will recommend any claim against Kern Medical Center be dismissed.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that Plaintiff's first amended complaint states plausible Fourteenth Amendment claims against Defendants Gonzalez and Hodge but fails to state a claim upon which relief can be granted against Kern Medical Center.

Accordingly, the Court **HEREBY RECOMMENDS**:

1. This action **PROCEED** only on Plaintiff's Fourteenth Amendment claims against Defendants Gonzalez and Hodge as asserted in his first amended complaint; and
2. That Kern Medical Center be **DISMISSED** from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days**

after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **April 16, 2025**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE